IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ELLEN STOVER**, *Plaintiff* <br><br> v. <br><br> **CHESTER DOWNS AND MARINA, LLC** *d/b/a* HARRAH'S PHILADELPHIA CASINO & RACETRACK, *Defendant* | **CIVIL ACTION** <br><br> **NO. 23-1416** |

**Baylson, J.**                                                                                       **March 28, 2024**

### MEMORANDUM RE: SUMMARY JUDGMENT

**I.     UNDISPUTED FACTS**

On February 28, 2021, Plaintiff Ellen Stover, a 75-year-old woman, visited Defendant's Casino to play the slot machines. Stover Dep. 10:21–22; 14:6-16; 16:15–17, Pl. Ex. B, ECF 19-2. It was night-time. Id. 14:06–19. Plaintiff visited that Casino approximately once a week for the past 15 years. Id. 15:09–24. She parked on the fourth floor of Defendant's parking garage. Id. 18:03–:23.

After playing for a couple of hours, Plaintiff decided to go home. Stover Dep. 17:22–18:02. To return to her car, Plaintiff walked between two wider spaces reserved for handicap patrons. Id. 20:06–21:01; 22:03–20.

**II.    DISPUTED FACTS**

**A.  The Fall**

Plaintiff testified that while walking between the handicap spaces, she tripped on a geometric rubber object, that was about 17 inches across and a bit over an inch raised off the ground. Stover Dep. 23:24–24:14; 50:11–19. At the time, Plaintiff did not see it because it was

1

dark in the parking area. Id. 26:3–14. Plaintiff stayed on the ground for several minutes and used assistance to get up. Id. 26:18–27:06.

Plaintiff recognized the rubber object as the rubber base component of a traffic indicator she had previously seen outside the Casino. Stover Dep. 32:18–33:08. Usually, they had poles



Figure 1: Alleged rubber base without pole. Moore Rep. at 2, Pl. Ex. E, ECF 19-5.



Figure 2: Alleged traffic device with the pole. CED Rep. at 11, Pl. Ex. F, ECF 19-6.

erected in the center to direct car flow. Id. After the fall, but before Plaintiff exited the garage, she spoke with Defendant's security guard about the incident. Id. 44:16–46:21.

She did not tell the guard what she tripped on; she testified she did not realize the base was part of a traffic device until she was driving out of the casino. Stover Dep. 48:06–49:18. Plaintiff had previously seen patrons, often inebriated, throw the bases like frisbees. Id. 52:05–53:06.

Defendant disputes that the Plaintiff tripped over the rubber base. Instead, the firm contends that because Plaintiff told the security guard a different story and the reporting guard testified that he did not see the rubber base on the ground, she must not have tripped over one. Tweedle Dep. 17:18–18:03, Pl. Ex. A, ECF 19-1.

**B. Safety Checks for Rubber Bases**

Defendant deploys these traffic devices—rubber bases with lightly colored poles—to manage traffic around their facility. Hopkins Dep. 12:05–13:02, Pl. Ex. D, ECF19-4. Defendant's

2

agents could not answer if they have a safety protocol to ensure that the rubber bases are properly maintained in the garages. Id. 12:05–15:12. Defendant's facility manager walked through the parking lots two to three times a day and employed cleaners to maintain the garage Id. 9:01–10. The facility manager first testified that the cleaners were not trained to look for hazards in the garages, and then changed his answer that they were. Id. 9:15–10:15. And the security guard involved in this incident testified that one or two guards would patrol the garage at a time, trained to look for and report hazards. Tweedle Dep. 11:07–12:14. He also testified that these traffic devices were often knocked out of place. Tweedle Dep. 19:01–10. Neither testified that a detached rubber base, or a misplaced traffic device constituted a hazard.

### C. Expert Reports

An engineering consultant, Scott Moore, produced an expert report for Plaintiff that concluded the rubber base rose 1 and 1/8 inch off the ground. Moore Rep. at 2. When Moore and Plaintiff inspected the parking lot on June 30, 2022, they observed the same rubber base component, a hexagonal shape without an attached pole, lying between parking spaces. Id. Moore opined that the parking lot was dimly lit, the base was black, and the greater than ¼ inch rise violated industry standards for safe walking paths. Id. at 4–5. Defendant also retained an engineering expert, who did not disturb Moore's conclusion that the base, if present, would pose a hazard, but concluded that Plaintiff tripped over a rise in the concrete, not the rubber base. CED Rep. at 5–6.

### III.   PROCEDURAL HISTORY AND PARTY CONTENTIONS

On February 14, 2023, Plaintiff filed suit against Defendant in state court, alleging Defendant's negligence in maintaining the parking garage caused Plaintiff to fall and sustain injuries. Pl. Compl., ECF 1. Defendant removed the case to this Court, which retains jurisdiction

under 28 U.S.C. § 1332(a). Discovery followed, and Defendant moved for summary judgment. Def. Mot. Summ. J., ECF 16. Plaintiff then responded. Pl. Resp. Summ. J., ECF 19.

Defendant makes two arguments. First, the Casino appears to argue that Plaintiff has not articulated what defective condition existed in the parking lot, because the initial security guard report, dearth of photographic evidence, and Plaintiff changing stories cast doubt that Plaintiff tripped on a rubber base from a traffic device. Def. Mot. Summ. J. at 11. Second, Defendant contends that even if Plaintiff did trip over the rubber base, Defendant did not have actual or constructive notice of the alleged defective condition (i.e. the rubber base), to be held liable. Id. at 11–13.

In her response, Plaintiff first points out that whether Plaintiff tripped over the rubber base—the alleged defective condition—is a disputed material fact that must go to a jury. Pl. Resp. at 11–12. Regarding notice, Plaintiff argues that the Defendant had notice because it put out the rubber base, making it responsible for the condition, or in the alternative, had constructive notice under Pennsylvania law. Id. at 21–24.

### IV.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477

U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

### V.     DISCUSSION

In Pennsylvania, the "[t]he duty owed to a business invitee is the highest duty owed to an entrant upon land." Campisi v. Acme Markets, Inc., 915 A.2d 117, 119 (Pa. Super. 2006) (internal citations and quotations omitted).[1] Adopting the Restatement (Second) of Torts § 343 concerning the standard for possessor liability to invitees, Pennsylvania holds:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he,
>
> a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> c) fails to exercise reasonable care to protect them against the danger.

Pace v. Wal-Mart Stores East, LP, 337 F. Supp. 3d 513, 519 (E.D. Pa. 2018) (Baylson, J.). But the "mere fact that an accident occurred does not give rise to an inference that the

---

[1] Defendant does not dispute that Plaintiff was a business invitee.

injured person was the victim of negligence." Cox v. Wal-Mart Stores E., L.P., 350 F. App'x. 741, 743 (3d Cir. 2009) (quoting Est. of Swift v. Ne. Hosp. of Philadelphia, 690 A.2d 719, 722 (Pa. Super. 1997)). Instead, the plaintiff must prove the four well-established elements of negligence—a recognized duty to protect against an unreasonable risk, a breach of that duty, causal connection between the breach and resulting injury, and damages. Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005).

### A. **Whether the Rubber Base is a Defective Condition is a Disputed Fact**

This Court does not write on a blank slate when evaluating slip-and-fall cases. In Pennsylvania, property owners "have a duty to keep their sidewalks in a reasonably safe condition for travel by the public." Mull v. Ickes, 994 A.2d 1137, 1140 (Pa. Super. 2010). The same extends to any well-trafficked area of the premises, like parking lots. See Ozer v. Metromedia Rest. Grp., Steak & Ale of Pennsylvania, Inc., 2005 WL 525400, at *6 (E.D. Pa. Mar. 7, 2005) (Pratter, J.) (citing Watkins v. Sharon Aerie No. 327 Fraternal Order of Eagles, 223 A.2d 742, 743 (Pa. 1966)).

Generally, "[w]hat constitutes a defect sufficient to render the property owner liable must be determined in the light of the circumstances of the particular case, and except where the defect is obviously trivial, that question must be submitted to the jury." Shaw v. Thomas Jefferson Univ., 80 A.3d 540, 543 (Pa. Commw. Ct. 2013) (quoting Breskin v. 535 Fifth Avenue, 113 A.2d 316, 318 (Pa. 1955)). But there is "no mathematical or bright-line rule" to guide what "depth or size" of a depression or irregularity is necessary to find that a defect is or is not "trivial". Shaw, 80 A.3d at 543. Rather, a finder of fact must look at the surrounding circumstance in each case. McGlinn v. City of Philadelphia, 186 A. 747, 748 (Pa. 1936).

Even so, several Pennsylvania cases are helpful to contextualize how the law interprets depressions or rises of over one inch in a walking surface. In Mull, the Pennsylvania Superior

Court held that summary judgment for the defendant was not proper when the plaintiff tripped and fell in a sidewalk gap that was 2 inches long and one-half inches deep. 994 A.2d at 1140. Because the gap was in the line of walking traffic and the defendant storeowner previously noticed the depression, the defect was not trivial as a matter of law. Id. The Superior Court came to a similar conclusion in Shaw, where a two, to two and one-half inch elevation change in the sidewalk, which caused plaintiff to trip in broad daylight, was also not trivial. Shaw, 80 A.3d 541–44. Both cases borrowed heavily from Pennsylvania Supreme Court precedent, which held that a sidewalk elevation change "four to five inches long and one to one and one-half inches deep" was not trivial, per se, and required a jury trial. Shaw, 80 A.3d at 544 (discussing Breskin, 113 A.2d at 318). This Court takes notice too, of the Superior Court's thorough survey of a walking-surface defect cases in Mull, which synthesized that depressions and protrusions of greater than one-inch and at least several inches wide frequently survive summary judgment. See Mull, 994 A.2d at 1141 (summarizing cases).

  Turning to the case here, this Court finds that it is a disputed and material fact whether a defective condition caused Plaintiff's fall. Preliminarily, the cause of Plaintiff's fall is a matter of genuine dispute. Plaintiff's testimony is unequivocal that while walking in a normally trafficked area she fell over a rubber base that measured one and one-eighth inch in height, and over seventeen inches in width. Stover Dep. 23:24–24:14; 50:11–19. That she did not tell the security guard such account may undermine her credibility to a jury, but it does not erase her sworn deposition.

  Based on the foregoing case law and considering the full circumstances, a jury could find a detached rubber base was a defective condition. First, it measured over one inch tall and over seventeen inches wide. Second, the area the Plaintiff tripped was near the entrance to the casino

and open to pedestrian traffic. While not a sidewalk, the area between parking spaces, especially those near a casino entrance, are sites of frequent walkers. Third, the rubber base was a dark color, which made it less visible at night on gray asphalt. Plaintiff further testified that the parking lot was not always well-lit. Stover Dep. 26:05–08. This Court's finding is further buttressed by Plaintiff's uncontested expert report that sudden elevation changes of this magnitude run afoul of industry standards. Moore Rep. at 4–5.

### B. Whether Defendant Had Notice is Also a Genuine Dispute

Which brings this Court to Defendant's second argument for summary judgment—that it did not have actual or constructive notice that the parking lot was in a defective condition. A possessor of land "owe[s] a duty to protect invitees from foreseeable harm." Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983). Such harm is attributable to the defendant when it "knows or by the exercise of reasonable care would discover the condition." Felix v. GMS, Zallie Holdings, Inc., 827 F. Supp. 2d 430, 436 (E.D. Pa. 2011) (Robreno, J.) (quoting Restatement (Second) of Torts § 343)), aff'd, 501 F. App'x 131 (3d Cir. 2012). Courts describe this standard as either "constructive" or "actual notice" of the dangerous condition. Swift, 690 A.2d at 723. A defendant is also on notice when it "had a hand in creating the harmful condition." Pace, 337 F. Supp. 3d at 519 (internal citations and quotations omitted).

The constructive notice determination "must depend on the circumstances of each case, but one of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident." Rogers v. Horn & Hardart Baking Co., 127 A.2d 762, 764 (Pa. 1956). Other factors include, "the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which the defendant, as a reasonably prudent person, had to

remedy it." Felix, 827 F. Supp. 2d at 437 (internal citations and quotations omitted). But the time elapsed, and the "relative durability of the defect" comprise often dispositive factors. Neve v. Insalaco's, 771 A.2d 786, 791 (Pa. Super. 2001). Essentially, when a defect is merely a "transitory" condition, like a spilled liquid in a supermarket, a plaintiff needs some affirmative proof that it persisted for a sustained period. Id. On the other hand, a plaintiff "need not" produce evidence "as to how long the defect existed if: (1) the defect is of a type with an inherently sustained duration . . . and (2) a witness saw the defect immediately before or after the accident." Id. (citing Hartigan v. Clark, 165 A.2d 647, 652 (Pa. 1960)). In other words, "direct proof of defendant's knowledge is not essential to the imposition of liability where the condition was a likely and foreseeable result of the manner in which the premises were maintained and used." Hartigan, 165 A.2d at 652. Moreover, normally the constructive notice question is within the ken of the jury to decide. Craig v. Franklin Mills Assocs., L.P., 555 F. Supp. 2d 547, 550 (E.D. Pa. 2008) (Robreno, J.), aff'd sub nom. Craig v. Mills Corp., 350 F. App'x 714 (3d Cir. 2009).

The instant defect, placed along the spectrum of "relative durability" cases, is most analogous to slip-and-falls caused by defective carpets. Carpets, like the rubber base, are transportable and low to the ground. Three cases are particularly relevant. In Hlywiak v. National Railroad Passenger Corporation, Judge Bartle found that a "hill" in a 75-pound carpet was akin to the raised grate in Neve, one of sustained duration that does not develop in an "instant." 223 F. Supp. 3d 395, 399 (E.D. Pa. 2016). In contrast, the Pennsylvania Superior Court held that a potential ripple or bump in a carpet, placed near the entrance of a grocery store was not one of "an inherently sustained duration." Crawford v. Grocery Outlet Bargain Mkt., 283 A.3d 384 (Pa. Super. 2022). The court noted that plaintiff did not see the alleged "bumps and raises" until after she fell, implying it was equally as likely that the fall created the condition itself. Id. The Superior

9

Court's decision in Crawford complements its holding in a final carpet case. In Pettyjohn v. Chester Downs and Marina, LLC, a plaintiff sued this same Defendant for injuries sustained after she tripped on an alleged rip, or tear in a carpet. 277 A.3d 1146 (Pa. Super. 2022). The lower court granted judgment for the defendant because plaintiff had failed to demonstrate how long the tear existed before her accident. Id. The Superior Court reversed, likening the rip in the carpet to an "inherently sustained" condition. Id. That factor, coupled with defendant's admitted failure to monitor the carpets for any potential defect, was sufficient for a jury to find constructive notice. Id.

The rubber base in this case was not a transitory condition, like a liquid spill. Defendant placed the rubber bases in the garage to direct traffic or manage flow, intending to be semi-permanent. Hopkins Dep. 12:10–13:02. Defendant's facility manager was not clear whether Defendant placed the devices out with or without the traffic pole. Assuming that the traffic pole was removed at some point after the Defendant placed the device, that condition was likely one of a sustained, unchanging condition, rather than a temporary defect. In other words, the detached base was not like a momentary ripple or bump in a carpet, but rather a tear that structurally altered its use. No evidence shows that an accompanying traffic pole was near the base around the time Plaintiff fell, indicating it was missing well in advance of this incident. Moreover, changing the structural integrity of the traffic device by removing the pole is not the sort of activity that occurs easily or in a "transitory" manner. Plaintiff's claim finds additional support in that she observed the exact same type of condition when she revisited the parking garage over a year later—the rubber bases remained between parking spots without a traffic pole. Moore Rep. at 4–5. And like in Pettyjohn, a jury could find that Defendant had no systems or procedures in place to monitor or inspect for rubber bases placed in unreasonably dangerous locations, without a pole attached.

Rather, Defendant depositions offer conflicting testimony about training to report hazards and did not specify that employees would even consider detached rubber bases a hazard. Hopkins Dep. 9:15–10:15. Altogether then, even if Defendant had not placed the alleged detached rubber base in the location where Plaintiff fell (i.e. actual notice or having a hand in creating the condition), the nature of the condition demands a jury decide whether Defendant had constructive notice.

It is possible, of course, that a third party moved the detached rubber base to the location where Plaintiff fell. If so, Defendant may argue it cannot be held responsible. However, this contention only corners Defendant with another doctrine that favors Plaintiff. For Defendant is also liable to Plaintiff if her injuries were caused by "the accidental, negligent, or intentionally harmful acts" of a third person and by Defendant's failure to "exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise protect them against it." Restatement (Second) of Torts § 344. This duty kicks in when the proprietor knows or has reason to know, "from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual." Massaro v. McDonald's Corp., 280 A.3d 1028, 1036 (Pa. Super. 2022) (quoting Restatement § 344 cmt. f). Here, Defendant's agent testified that he was aware that the rubber bases would be improperly moved. Tweedle Dep. 13:01–10. Thus, to the extent Defendant tries to disclaim its responsibility in placing this rubber base, it cannot do so when it was fully aware, "from past experience," that third parties displaced them. Id. A reasonable jury could find that Defendant, by not instituting a procedure to remedy, investigate, or warn other patrons of this harm, acted negligently.

## VI. CONCLUSION

For the foregoing reasons, Defendant's motion is **DENIED**. An Order will be forthcoming.

O:\CIVIL 23\23-1416 Stover v. Chester Downs and Marina, LLC et al\23-1416 SJ Memo.docx